UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ZAHRA SOUEIDAN,

                Debtor.

_____/

STUART A. GOLD, TRUSTEE,

                Plaintiff,

vs.

ALI H. SOUEIDAN,

                Defendant.

_____/

Case No. 23-42109

Chapter 7

Judge Thomas J. Tucker

Adv. Pro. No. 23-4167

**OPINION REGARDING THE DEFENDANT'S MOTION
FOR RECONSIDERATION AND RELIEF FROM JUDGMENT**

**I. Introduction**

This adversary proceeding is before the Court on the motion by the Defendant, Ali

Soueidan, entitled "Defendant's Motion to Set Aside Default and Default Judgment Pursuant to

F.R.Civ.P. 55(c) and 60(b)," filed on June 19, 2023 (Docket # 12, the "Motion"). The Motion

seeks reconsideration of, and relief from, the Court's June 14, 2023 default judgment against the

Defendant (Docket # 10, the "Default Judgment").[1] The Plaintiff Trustee filed a response

objecting to the Motion (Docket ## 16, 17). The Court held a telephonic hearing on the Motion

on July 19, 2023, and then took the Motion under advisement.

_____

[1] The Motion also seeks relief from the Clerk's Entry of Default, filed June 14, 2023 (Docket # 8), based on Fed. R. Civ. P. 55(c), which applies in adversary proceedings under Fed. R. Bankr. P. 7052. That part of the Motion only matters if the Court grants relief from the Default Judgment, which the Court will not do, for the reasons discussed in this Opinion.

The Court has reviewed and considered all of the written and oral arguments of the parties, all of the papers filed by the parties, and other relevant parts of the record. The Court will deny the Motion, for the reasons stated below.

## II. Background

In this case, the Plaintiff Trustee filed his complaint against the Defendant on April 20, 2023, and then filed an amended complaint on May 30, 2023, seeking to avoid, as a fraudulent transfer, a transfer of real estate that was done on May 24, 2019 by the Chapter 7 bankruptcy Debtor, Zahra Soueidan (the "Debtor").[2] The Debtor is the Defendant's wife, and the transfer was a transfer of the real estate in which the Debtor and the Defendant live, located at 5734 Middlesex, Dearborn, Michigan (the "Property"). Immediately before the transfer, the Debtor was the sole owner of the Property. By a quit claim deed recorded on May 24, 2019, the Debtor transferred the Property to the Defendant and herself, as husband and wife, as a tenancy by the entireties. The complaint and the amended complaint alleged that the transfer is avoidable under the combination of 11 U.S.C. § 544(b) and Michigan's fraudulent transfer statutes, Mich. Comp. Laws §§ 566.34(1)(a) and 566.34(1)(b).

It is undisputed that the Defendant failed to timely respond to either the complaint or the amended complaint. As indicated in the summons served with the complaint,[3] and under applicable rules, the Defendant's answer to the complaint originally was due no later than 30 days after the date of issuance of the summons. *See* Fed. R. Bankr. P. 7012(a). This meant that

---

[2] Docket ## 1, 6.

[3] Docket # 2.

2

the original answer deadline was Monday, May 22, 2023.[4]  But on May 10, 2023, the Defendant,

through his attorney, Tarek N. Chami, filed a stipulation to extend the deadline to respond to the

complaint, until June 13, 2023.[5]  That same day the Court entered an order granting the requested

extension of time, but ordering that "**additional extensions of this deadline are disallowed**."[6]

Thus, the Defendant's deadline to answer or otherwise respond to the complaint was June 13,

2023.

On May 30, 2023, the Plaintiff Trustee filed his amended complaint, which was served on

the Defendant's attorney the same day, via the Court's ECF system.[7]  It is undisputed that under

Fed. R. Civ. P. 15(a)(3), which applies in adversary proceedings under Fed. R. Bankr. P. 7015,

the deadline for the Defendant to respond to the amended complaint was 14 days after May 30,

2023, *i.e.*, June 13, 2023.[8]

---

[4]  As stated on the summons, the date of issuance of the summons was April 20, 2023. (*See* Summons (Docket # 2)).  Thirty days after that date was Saturday, May 20, 2023.  Under Fed. R. Bankr. P. 9006(a)(1)(C), this meant that the deadline was Monday, May 22, 2023.

[5]  Docket # 4.

[6]  Docket # 5 (bold in original).

[7]  *See* Docket ## 6, 7.

[8]  Civil Rule 15(a)(3) states:

> Unless the court orders otherwise, any required response to an amended
> pleading must be made within the time remaining to respond to the
> original pleading or within 14 days after service of the amended
> pleading, whichever is later.

Fed. R. Civ. P. 15(a)(3).  Because the amended complaint was served on the Defendant's attorney through the Court's ECF system on the date is was filed, service of the amended complaint was complete on the date of filing (May 30, 2023), and 14 days after that date was June 13, 2023.  *See* Fed. R. Civ. P. 5(b)(2)(E), which applies in adversary proceedings under Fed. R. Bankr. P. 7005; *see also* ECF Procedure 12(a)(1) (Bankr. E.D. Mich.).  The Court's ECF Procedures apply in this adversary

The Defendant never filed an answer or other response to either the original complaint or the amended complaint. The day after the June 13, 2023 answer deadline passed, on June 14, 2023, the Clerk entered a default against the Defendant; the Plaintiff Trustee moved for a default judgment, and the Court entered the Default Judgment.[9]

The Default Judgment granted the relief sought by the amended complaint. It avoided the May 24, 2019 transfer of the Property, and adjudged that the Property is owned solely by the bankruptcy estate in the Debtor's bankruptcy case, free and clear of any interest of the Defendant.

The Defendant's Motion does not allege that the entry of the Default Judgment was erroneous in any way. Rather, the Motion seeks relief from that Default Judgment, based on Fed. R. Civ. P. 60(b)(1), which applies under Fed. R. Bankr. P. 9024. Defendant argues for such relief based on alleged "mistake . . . or excusable neglect." In support of the Motion, the Defendant filed his own affidavit and a declaration of attorney Tarek N. Chami.[10] The Defendant alleges that he did not file a timely answer to the amended complaint because the Defendant's attorney, Mr. Chami, mistakenly thought that the Defendant had more time, beyond June 13, 2023, to answer the Plaintiff Trustee's amended complaint. And, the Defendant alleges, attorney Chami advised the Defendant of this.

In the Motion and in its supporting documents, neither the Defendant nor attorney Chami state what the legal basis was for their thinking that the Defendant had additional time beyond

---

proceeding. *See* L.B.R. 9029-1(a), 9029-1(c) (E.D. Mich.).

[9] Docket ## 8, 9, 10.

[10] Docket ## 13-1, 20.

4

June 13, 2023 to answer the amended complaint. Nor do they state how much additional time they thought they had.

## III. Discussion

The Court will deny the Motion, based on the following considerations.

*First*, to the extent the Motion is a motion for reconsideration, the Court finds that the Motion fails to demonstrate a palpable defect by which the Court and the parties have been misled, and that a different disposition of the case must result from a correction thereof. *See* L.B.R. 9024-1(a)(3) (E.D. Mich.). It is clear, and undisputed, that the Defendant's deadline to answer the Plaintiff Trustee's amended complaint was June 13, 2023, and that the Defendant failed to file an answer or any other response to the amended complaint. There was no error in the Court's entry of the Default Judgment on June 14, 2023.

*Second*, as further discussed below, the allegations in the Motion, and in the Defendant's affidavit and attorney Chami's declaration, do not establish excusable neglect or mistake under Fed. R. Civ. P. 60(b)(1), or any other valid ground for relief from the Default Judgment.

*Third*, any neglect or mistake by the Defendant's attorney, Mr. Chami, is attributable to the Defendant, for purposes of determining whether there was excusable neglect or mistake within the meaning of Rule 60(b)(1).[11] *See, e.g., Shapiro v. Abu-hamdan (In re Abu-hamdan)*,

---

[11] During the hearing on the Motion, the Defendant's new attorney argued that Mr. Chami did not represent the Defendant in this adversary proceeding, when Mr. Chami allegedly gave the Defendant mistaken advice that he had additional time to respond to the Plaintiff Trustee's amended complaint. There are at least three flaws in that argument. First, it is belied by the record. The Court's docket entry number 4 shows that it was attorney Chami who actually filed the May 10, 2023 stipulation, seeking an extension of the Defendant's original deadline to answer the Plaintiff Trustee's complaint. (Docket # 4). And *in four different places* in that stipulation and the proposed order filed with that stipulation, Mr. Chami was described as the Defendant's attorney. These four places are highlighted in yellow by the Court in the attached copy of the stipulation. And on page 2 of the stipulation, Mr. Chami explicitly

5

558 B.R. 191, 193-94 (Bankr. E.D. Mich. 2016) (citing and quoting Supreme Court and Sixth

Circuit cases); *see also McCurry ex. rel. Turner v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d

586, 594-95 (6th Cir. 2002).

*Fourth*, the allegations in the Motion do not demonstrate a mistake or neglect by the

Defendant or his attorney, Mr. Chami, that is excusable under Rule 60(b)(1).  The type of

mistake alleged here, by attorney Chami about the rules and the law governing the Defendant's

deadline to answer the Plaintiff's amended complaint, is not excusable, and cannot be the basis

for relief under Rule 60(b)(1).  Many cases support this conclusion.  For example, the United

States Court of Appeals for the Sixth Circuit has held that:

> [C]laims of attorney error and legal malpractice foreclose an award
> of relief under Rule 60(b)(1).  In particular, we recognized in *FHC*
> *Equities, L.L.C. v. MBL Life Assurance Corp*., 188 F.3d 678, 683-
> 87 (6th Cir. 1999), that neither strategic miscalculation nor
> counsel's misinterpretation of the law warrants relief from a
> judgment.

*McCurry*, 298 F.3d at 593.  In citing its prior *FHC Equities* case with approval, the Sixth Circuit

described *FHC Equities*, in part, this way:

> [In *FHC Equities*] we considered whether the plaintiff could
> invoke Rule 60(b)(1) to overcome its untimely filing of a notice of
> appeal. The plaintiff attributed this failure to its **counsel's**

---

signed the stipulation as "*Attorney[] for Defendant*."  *Id.* (italics in original).

Second, and in any event, in giving the Defendant legal advice about the deadline for filing an
answer in this adversary proceeding, as attorney Chami's declaration says he did, attorney Chami clearly
acted as an attorney for the Defendant.  (*See* Decl. of Tarek N. Chami (Docket # 20) at ¶ 8).

Third, *if* it were true that the Defendant was *not* represented by Mr. Chami, then the Defendant is
personally guilty of *inexcusable* neglect, for not filing an answer, while at the same time not having
obtained an attorney to represent him in this adversary proceeding until after the Default Judgment was
entered, 55 days after the complaint was filed.

> **mistaken interpretation of the relevant Federal Rules of Civil Procedure**, **and argued that this constituted "inadvertence, mistake, or surprise" within the meaning of Rule 60(b)(1).** *FHC Equities*, 188 F.3d at 683.
>
> **We held otherwise**. Initially, we noted that "Plaintiff does not point us to a single case . . . which holds that attorney misinterpretation of the law can constitute 'mistake' under Rule 60(b)(1)." 188 F.3d at 684. In contrast, we identified several cases from other circuits "in which the alleged 'mistake' was the attorney's misinterpretation of the law or a strategy decision," and we observed that the courts in those cases had declined to grant relief under Rule 60(b)(1). 188 F.3d at 685 (collecting cases). . . . .
>
> As is fairly evident from our ruling in *FHC Equities*, an attorney's inaction or strategic error based upon a misreading of the applicable law cannot be deemed "excusable" neglect, even though it might well be excusable for the client to rely on the advice of counsel. Other courts have agreed, recognizing that "the case law consistently teaches that out-and-out lawyer blunders—the type of action or inaction that leads to successful malpractice suits by the injured client—do not qualify as 'mistake' or 'excusable neglect' within the meaning of [Rule 60(b)(1)]." *Helm v. Resolution Trust Corp.*, 161 F.R.D. 347, 348 (N.D.Ill.1995), *aff'd*, 84 F.3d 874 (7th Cir.1996); *see also United States v. Prairie Pharmacy, Inc.*, 921 F.2d 211, 214 (9th Cir.1990) (holding that an attorney's "failure to verify the requirements of the law demonstrates attorney malpractice, not excusable neglect under the law of this circuit"); *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288–89 (5th Cir.1985) ("Were this Court to make an exception to finality of judgment each time a hardship was visited upon the unfortunate client of a negligent or inadvertent attorney, even though the result be disproportionate to the deficiency, courts would be unable to ever adequately redraw that line again, and meaningful finality of judgment would largely disappear.").

*McCurry*, 298 F.3d at 593, 595 (emphasis added). The Sixth Circuit later reiterated its holding in

*McCurry*, in the case of *Broach v. City of Cincinnati*, 244 Fed. App'x 729, 735 (6th Cir. 2007)

(citing *McCurry* for the proposition that "[n]either strategic miscalculation nor counsel's

7

misinterpretation of the law warrants relief from a judgment"). "An attorney is charged with knowing and understanding the rules of the courts in which he practices." *Id.* (quoting *Rice v. Consol. Rail Corp.*, No. 94–3963, 1995 WL 570911, at \*4 (6th Cir. Sept. 27, 1995)).

Thus, the alleged mistake by the Defendant's attorney, Mr. Chami, cannot be deemed mistake or excusable neglect under Rule 60(b)(1). *See also In re Peek*, 614 B.R. 274, 276-77 (Bank. E.D. Mich. 2020) (citations omitted).

This Court's opinions in two prior cases further support this conclusion, and place it in the proper procedural framework under Rule 60(b)(1). Initially, in *In re Sharkey*, 560 B.R. 470 (Bankr. E.D. Mich. 2016), this Court described principles governing Rule 60(b)(1) motions:

> Fed. R. Civ. P. 60(b) provides, in pertinent part:
>
> On motion and just terms, the court may relieve a
> party or its legal representative from a final
> judgment, order, or proceeding for the following
> reasons: (1) mistake, inadvertence, surprise, or
> excusable neglect[.]
>
> "The decision on a motion to set aside a default judgment is
> left to the discretion of the trial judge." *Bavely v. Powell* (*In re
> Baskett*), 219 B.R. 754, 757 (B.A.P. 6th Cir. 1998) (relying on
> *Meganck v. Couts* (*In re Couts*), 188 B.R. 949, 951 (Bankr. E.D.
> Mich.1995)). In *Waifersong, Ltd. Inc. v. Classic Music Vending*,
> 976 F.2d 290, 292 (6th Cir. 1992), the Sixth Circuit explained that
> a determination of whether to set aside a default judgment under
> Civil Rule 60(b)(1) requires a three-step analysis. First, the moving
> party must "demonstrate that his default was the product of
> mistake, inadvertence, surprise, or excusable neglect." Only after
> this threshold requirement has been satisfied may the Court
> consider the remaining two steps of the analysis; namely "whether
> the [moving party] has a meritorious defense," and "whether the

8

[non-moving party] will be prejudiced" by relief from judgment. *Id.*[12]

In order to show that relief is appropriate under Rule 60(b)(1) based on "excusable neglect," Debtor must show both (1) that his conduct in failing to timely respond to Creditor's Objection constituted "neglect" within the meaning of Rule 60(b)(1); and (2) that his "neglect" was excusable. In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388 (1993), the Supreme Court explained that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or . . . 'to leave undone or unattended to esp[ecially] through carelessness.'" *Id.* (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) (emphasis added)). Based on the ordinary meaning of "neglect," the Court concluded that the concept of "neglect" under Civil Rule 60(b)(1) denotes that "a party is partly to blame" for failing to act, and that "at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394 (internal quotation marks and citations omitted).

---

[12] In support of his Rule 60(b)(1) Motion in this case, the Defendant cites the three-factor test recognized by the Sixth Circuit case of *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983). Those three factors are "(1) Whether culpable conduct of the defendant led to the default; (2) Whether the defendant has a meritorious defense, and (3) Whether the plaintiff will be prejudiced." *Id.* at 292. In *Waifersong*, however, the Sixth Circuit later clarified that these factors are to be applied differently, and more strictly, when the court is considering whether to grant relief from a default judgment under Civil Rule 60(b)(1), compared to when the court is deciding whether merely to grant relief from the entry of a default under Civil Rule 55(c), before any default judgment has been entered. *See Waifersong*, 976 F.2d at 292. In the context where a default judgment has been entered, under Rule 60(b)(1), "the culpability factor is framed in terms of 'mistake, inadvertence, surprise, or excusable neglect.'" *Id.* In addition,

> [Rule 60(b)(1)] mandates that a defendant cannot be relieved of a default judgment unless he can demonstrate that his default was the product of mistake, inadvertence, surprise, or excusable neglect. It is only when the defendant can carry this burden that he will be permitted to demonstrate that he also can satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the plaintiff should relief be granted.

*Id.* at 292.

9

If Debtor shows "neglect," the next issue is whether Debtor's neglect was excusable. In *Pioneer*, the Supreme Court explained that a determination of

> whether a party's neglect of a deadline is excusable . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission . . . [including] the danger of prejudice to the [party opposing relief], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.

> In determining whether Debtor's failure to timely respond to the Creditor's Objection was "excusable," the Court must focus not only on whether Debtor's failure was excusable, but also on whether the failure or neglect of his attorney was excusable. The Supreme Court discussed this point at some length and made this clear in *Pioneer*, concluding that "the proper focus is upon whether the neglect of [the movants] and their counsel was excusable." *Id.* at 396-97 (italics in original.)

560 B.R. at 472-73 (footnote 12 added).

Next, in the *Peek* case, cited above, this Court applied the Supreme Court's *Pioneer*

factors in a way that applies here:

> Under the circumstances, the type of mistake or neglect that is alleged in this case is not "excusable neglect." *See, e.g., Symbionics, Inc. v. Ortlieb*, 432 Fed. App'x[.] 216, 220 (4th Cir. 2011) (holding "that the district court abused its discretion when it determined that . . . counsel's computer calendaring error constituted excusable neglect"); *In re Bonfiglio*, No. 18-8004, 2018 WL 5295879, at *5 ([B.A.P. 6th Cir.] Oct. 24, 2018) (holding that a litigation error (failing to respond to a motion to avoid a lien which resulted in lien avoidance) was not "excusable neglect").
>
> In *Bonfiglio*, for example, the Sixth Circuit Bankruptcy Appellate Panel held that:

10

> "'case law consistently teaches that out-and-out
> lawyer blunders—the type of action or inaction that
> leads to successful malpractice suits by the injured
> client—do not qualify as 'mistake' or 'excusable
> neglect' within the meaning of Rule 60(b)(1).'"
> *Barron v. Univ. of Mich.*, 613 F. App'x[.] 480, 487
> (6th Cir. 2015) (citing *McCurry ex rel. Turner v.
> Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586,
> 595 (6th Cir. 2002)).

2018 WL 5295879*, at* *4.

In the *Symbionics* case, the United States Court of Appeals
for the Fourth Circuit discussed in detail the application of the four
*Pioneer* factors "to be considered in determining whether
excusable neglect exists" in this type of situation. 432 Fed. App'x
at 219. Among other things, *Symbionics* held that the third *Pioneer*
factor, which the court phrased as "the untimely party's reason for
the delay," and which *Pioneer* phrased as "the reason for the delay,
including whether it was within the reasonable control of the
movant," is "the most important to the excusable neglect inquiry."
*Id.* (citation omitted). In *Symbionics*, the Fourth Circuit held that
the attorney's neglect in that case — a miscalculation of the appeal
deadline allegedly caused by "a quirk in the functionality of
counsel's computer calendar" — was not excusable neglect. *Id.* at
218, 220. After noting that "[e]xcusable neglect is not easily
demonstrated, nor was it intended to be," the Fourth Circuit found
as follows:

> We find nothing extraordinary or unusual about
> counsel's calendaring error that should relieve
> Symbionics of its duty to comply with the time limit
> of Rule 4(a)(1). Counsel's total dependence on a
> computer application — the operation of which
> counsel did not completely comprehend — to
> determine the filing deadline for a notice of appeal
> is neither "extraneous" to nor "independent" of
> counsel's negligence. Rather, the failure to discover
> that the calendar display had reverted to January
> 2009, and the reliance on the resulting incorrect
> deadline computation, are the very essence of
> counsel's negligence here. Furthermore, **this neglect
> is precisely the sort of "run-of-the-mill**

11

> **inattentiveness by counsel" that we have**
> **consistently declined to excuse in the past.**

> *Id.* at 220 (emphasis added) (citations omitted) (internal record
> citation omitted).

*Peek*, 614 B.R. at 276-77 (footnote omitted).

In this case, the Court cannot find that there was excusable neglect or mistake under Civil Rule 60(b)(1). The cases cited above, including the Sixth Circuit cases of *McCurry*, *FHC Equities*, and *Broach*, foreclose such a finding. And applying the *Pioneer* factors in the way the Fourth Circuit did in the *Symbionics* case, the Court finds that the *Pioneer* factors weigh against finding excusable neglect in this case. The "most important" of the *Pioneer* factors, "the reason for the delay, including whether it was within the reasonable control of the movant," weighs strongly against finding that the Defendant's neglect is excusable, and outweighs the other *Pioneer* factors, assuming that those factors are neutral or weigh in favor of finding excusable neglect.[13]

*Fifth*, the Motion argues that the Defendant has a meritorious defense to the Plaintiff Trustee's amended complaint to present, if relief from the Default Judgment is granted. But the Court need not consider this issue, unless and until the Court first finds that there was neglect or mistake that is "excusable" under Rule 60(b)(1). *See, e.g.*, *In re Peek*, 614 B.R. at 277; *In re Sharkey*, 560 B.R. 470, 472 (Bankr. E.D. Mich. 2016) (citing *Waifersong, Ltd. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)); *Nathan v. Cavendish* (*In re Cavendish*), 608 B.R. 802, 806 n.4 (Bankr. E.D. Mich. 2019). In this case the Court has serious doubts about whether

---

[13] As noted above, the other *Pioneer* factors are "the danger of prejudice to the [party opposing relief], the length of the delay and its potential impact on judicial proceedings," and "whether the movant acted in good faith."

the Defendant has shown a meritorious defense, but it is unnecessary for the Court to decide that issue.

## IV.  Conclusion

For the reasons stated in this Opinion, the Court will enter an order denying the Defendant's Motion.

**Signed on July 24, 2023**



/s/ Thomas J. Tucker

**Thomas J. Tucker**
**United States Bankruptcy Judge**

IN RE:

ZAHRA SOUEIDAN,

    Debtor,

                                 Case No. 23-42109-tjt
                                 Chapter 7
                                 Hon. Thomas J. Tucker

---

STUART A. GOLD, Trustee                     Adversary Proceeding
                                          Case No. 23-04167-tjt

    Plaintiff

v.

ALI SOUEIDAN

    Defendant

| | |
|---|---|
| GOLD, LANGE, MAJOROS & SMALARZ, P.C. | CHAMI LAW PLLC |
| Elias T. Majoros (P41040) | Tarek N. Chami (P76407) |
| 24901 Northwestern Hwy, Ste. 444 | 22000 Michigan Ave, Suite 200 |
| Southfield, MI 48075 | Dearborn, MI 48124 |
| (248) 350-8220 | (313) 444-5029 |
| emajoros@glmpc.com | tarek@chamilawpllc.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

### STIPULATION TO EXTEND TIME FOR DEFENDANT ALI SOUEIDAN TO RESPOND TO COMPLAINT

The parties, through their undersigned counsel, hereby stipulate and agree that

the deadline for Defendant, Ali Soueidan to answer or otherwise respond to

Plaintiff's Complaint shall be extended to and including June 13, 20203

RESPECTFULLY SUBMITTED this 10th day of May 2023.

/s/Elias T. Majoros
Elias T. Majoros (P41040)
GOLD, LANGE, MAJOROS &
SMALARZ, P.C.
24901 Northwestern Hwy, Ste. 444
Southfield, MI 48075
(248) 350-8220
emajoros@glmpc.com
*Attorneys for Plaintiff*


/s/Tarek N. Chami
Tarek N. Chami (P76407)
22000 Michigan Ave, Suite 200
Dearborn, MI 48124
(313) 444-5029
tarek@chamilawpllc.com
*Attorneys for Defendant*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

IN RE:

ZAHRA SOUEIDAN,

      Debtor,

Case No. 23-42109-tjt
Chapter 7
Hon. Thomas J. Tucker

---

STUART A. GOLD, Trustee

      Plaintiff

Adversary Proceeding
Case No. 23-04167-tjt

v.

ALI SOUEIDAN,

      Defendant

---

| GOLD, LANGE, MAJOROS & SMALARZ, P.C. | CHAMI LAW PLLC |
|---|---|
| Elias T. Majoros (P41040) | Tarek N. Chami (P76407) |
| 24901 Northwestern Hwy, Ste. 444 | 22000 Michigan Ave, Suite 200 |
| Southfield, MI 48075 | Dearborn, MI 48124 |
| (248) 350-8220 | (313) 444-5029 |
| emajoros@glmpc.com | tarek@chamilawpllc.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

## [PROPOSED] ORDER TO EXTEND TIME FOR DEFENDANT ALI SOUEIDAN TO RESPOND TO COMPLAINT

Based on the stipulation of the parties, filed on May 5, 2023 (Docket # ), the

Court finds good cause to enter this Order.

**IT IS ORDERED** that Defendant Ali Soueidan's time to answer or otherwise

respond to Plaintiff's Complaint shall be extended to and including June 13, 2023.


_____
Hon. Thomas J. Tucker
United States Bankruptcy Judge